UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JANET B. ROBERTSON, | ) | Case No. CV 17-00571-JDE |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| vs. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ──────────────────────── | ) | |

**I.**

**PROCEEDINGS**

Plaintiff Janet B. Robertson ("Plaintiff") filed a complaint on January 24, 2017, seeking review of the denial of her application for Disability Insurance Benefits ("DIB") by the Commissioner of Social Security ("Commissioner"). Pursuant to consents of the parties, the case has been assigned to the undersigned Magistrate Judge for all purposes. (Dkt. Nos. 12-14.) Consistent with the Order

---

[1] Nancy A. Berryhill is now Acting Commissioner of Social Security ("Commissioner" or "Defendant") and is substituted in as defendant. See 42 U.S.C. 205(g).

1

Re: Procedures in Social Security Appeal (Dkt. No. 5), on September 29, 2017, the parties filed a Joint Stipulation addressing their respective positions. (Dkt. No. 19 ("Jt. Stip.").) The Court has taken the Joint Stipulation under submission without oral argument and as such, this matter is now ready for decision.

## II.
## LEGAL STANDARD

### A. Standard of Review

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (citations and internal punctuation omitted). The standard of review of a decision by an Administrative Law Judge ("ALJ") is "highly deferential." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation omitted). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration ("SSA") for further proceedings. Id.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "Even when the

evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold Commissioner's decision when evidence is susceptible to more than one rational interpretation). However, the Court may only review the reasons provided by the ALJ in the disability determination, and may not affirm the ALJ on a ground upon which the ALJ did not rely. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted); see also Orn, 495 F.3d at 630 (citation omitted).

Lastly, even if an ALJ erred, a reviewing court will still uphold the decision if the error was inconsequential to the ultimate non-disability determination, or where, despite the error, the ALJ's path "may reasonably be discerned," even if the ALJ explained the decision "with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations, internal punctuation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110 (citing, inter alia, 20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant currently performs "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine if the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. Id. If so, the ALJ proceeds to a third step to determine if the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations. See Rounds, 807 F.3d at 1001. If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step, the ALJ assesses the

3

claimant's residual functional capacity ("RFC"), that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she performed it when she worked in the past, or as that same job is generally performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016) (citing, inter alia, SSR 82-61); see also 20 C.F.R. §§ 404.1560(b), 416.960(b).

If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Tackett, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1560(b)(3)); see also 20 C.F.R. § 416.960(b)(3).

The claimant generally bears the burden at each of steps one through four to show that she is disabled or that she meets the requirements to proceed to the next step; the claimant bears the ultimate burden to show that she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

# III.

# BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was born on October 2, 1956. (Administrative Record ("AR") 68.) On March 6, 2014, Plaintiff filed a Title II application for DIB benefits claiming disability beginning January 13, 2014. (AR 24, 67.) After her application was denied initially and upon reconsideration (AR 104-19, 121-34), Plaintiff requested an administrative hearing. (AR 151-54.) Plaintiff, represented by counsel, appeared and testified at the hearing before the ALJ on August 27, 2015. (AR 64-103.)

On September 25, 2015, the ALJ returned an unfavorable decision. (AR 21-37.) At step one of the sequential evaluation, the ALJ found no substantial gainful activity since the alleged onset date. (AR 26.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "disc disease of the cervical spine, status post-surgery; disc disease of the lumbar spine, status post-surgery; osteoarthritis of the left knee; history of bilateral carpal tunnel syndrome, status post right thumb surgery; and asthma." (Id.) At step three, the ALJ found that none of these impairments or combination of impairments met or equaled a listed impairment. (AR 28.) Next, the ALJ found that Plaintiff had the RFC to perform a range of light work, further limited as follows (AR 28):

> The [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she can perform frequent pushing and pulling with the upper extremities; she cannot climb ladders, rope, or scaffolds; she can occasionally climb ramps and stairs; she cannot crawl; she can occasionally balance, stoop, kneel, and crouch; she cannot perform overhead reaching bilaterally; she can perform all other reaching frequently; she can perform frequent handling, fingering,

and feeling bilaterally; the [Plaintiff] should avoid all exposure to vibration and hazards; and she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

At step four, the ALJ found that Plaintiff was able to perform her past relevant work as: a medical records clerk (Dictionary of Occupational Titles ("DOT") 079.262-014); receptionist (DOT 237.367-038); and insurance specialist (DOT 079.262-010) as she actually performed it and as generally performed in the national economy. (AR 31-2.) As a result, the ALJ concluded that Plaintiff was not disabled from the alleged onset date through the date of the decision. (AR 24.)

On October 19, 2015, Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR 16-20.) On December 15, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1-7.) Plaintiff then commenced this action.

## IV.

## DISCUSSION

The parties present three disputed issues (Jt. Stip. at 2-3.):

Issue No. 1: The ALJ erred in failing to set forth requisite clear and convincing reasons for rejecting the opinion of treating source Dr. Massoudi

Issue No. 2: The ALJ erred in failing to properly evaluate Plaintiff's subjective complaints and credibility.

Issue No. 3: The ALJ erred in finding Plaintiff retains the RFC to perform sedentary work and could return to work as a Medical Records Clerk.

The Court finds that the ALJ's reasoning and application of law were sound.

### A. Evaluation of Medical Testimony

Plaintiff argues that the ALJ committed reversible error in failing to set forth clear and convincing reasons for rejecting the opinion of her treating physician, Dr. Massoudi. (Id. at 3.) The Commissioner argues that the ALJ properly

discounted Dr. Massoudi's opinions because they were not supported by evidence, including Plaintiff's own subjective symptom testimony, the opinions of non-examining state agency physicians, and other medical evidence. (Id. at 5-7.)

### 1. **Applicable Law**

Three types of doctors may offer opinions in Social Security cases: (1) those who treated the plaintiff; (2) those who examined but did not treat the plaintiff; and (3) those who did neither. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Treating doctors' opinions are generally given more weight than those of examining doctors, and examining doctors' opinions generally receive more weight than those of non-examining doctors. Id. Treating doctors' opinions receive greater weight because they are employed to cure and have more opportunity to know and observe patients as individuals. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Id. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Id. An "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). To reject the un-contradicted opinion of a treating doctor, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barhnart, 427 F.3d 1211, 1216 (9th Cir. 2005). Where a treating doctor's opinion is contradicted, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.

An ALJ need not recite "magic words" to reject a treating physician's opinion; the court may draw "specific and legitimate inferences" from the ALJ's opinion. Magallanes, 881 F.2d at 755. "[I]n interpreting the evidence and

developing the record, the ALJ does not need to 'discuss every piece of evidence.'"
Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting
Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

### 2. Analysis

Plaintiff contends that the ALJ erred in giving significant weight to non-examining, state agency, physicians and ascribing little weight to the opinion of Plaintiff's treating physician, Dr. Massoudi. (Jt. Stip. at 3-4.) Dr. Massoudi had provided Plaintiff with a completed exertional questionnaire that limited Plaintiff to: walking, standing, or sitting for no more than thirty minutes at a time during an eight-hour day; lifting or carrying items no more than 15 pounds; pushing or pulling items no more than 10 pounds; and never bending or reaching. (AR 769.) Dr. Massoudi further opined that Plaintiff did not have the capacity to work, nor would she ever regain that capacity. (Id.) In contrast, the non-examining, state agency physicians concluded that Plaintiff could perform light work with less stringent limitations. (AR 114-19, 129-34.) The ALJ found that the state agency physicians' opinions were well-supported by the evidence, while ascribing low weight to Dr. Massoudi's opinion for the lack of support in the objective evidence for his conclusions.[2] (AR 31.) As the ultimate opinion of Plaintiff's treating physician was contradicted, the standard governing whether the ALJ appropriately rejected Dr. Massoudi's opinion requires the presentation of specific, legitimate reasons supported by substantial evidence. Bayliss, 427 F.3d at 1216.

In assessing Dr. Massoudi's opinion, the ALJ found that the conclusions did not correlate well with the other evidence in the record. (AR 31.) For example, he noted that Dr. Massoudi claimed Plaintiff was incapable of overhead reaching (id. at 769), but during the hearing Plaintiff stated that, while difficult, she was able to

---

[2] The Court analyzes in greater detail the ALJ's decision to adopt the findings of the state agency non-examining physicians below.

8

reach overhead for limited periods of time. (AR 88.) The ALJ also concluded that Dr. Massoudi's opinion was less than persuasive given his limited relationship with Plaintiff, noting that he saw Plaintiff only as her cervical spine surgeon. (AR 31, 363-386.) Though Plaintiff argues that the ALJ is incorrect in characterizing the treatment relationship between her and Dr. Massoudi as limited (Jt. Stip. at 9), this is belied by her testimony at the hearing. When asked at the hearing by the ALJ whether she received treatment from Dr. Massoudi, Plaintiff explained, "I do not see him. He was the surgeon for my neck . . . . [a]nd I'm done with him." (AR 82.) Within the same line of questioning, Plaintiff listed two other physicians as treating her for primary care and for pain. (See AR 83.) Finally, the ALJ notes that the limitations set forth in Dr. Massoudi's opinion were disproportionate to the diagnostic evidence, citing that imaging records subsequent to Plaintiff's spine surgeries demonstrate only mild musculoskeletal pathology. (AR 30, 31, 368, 370, 371, 385, 386, 387, 395, 397.) Plaintiff primarily offers her own subjective symptom testimony to bolster Dr. Massoudi's opinion. (See Jt. Stip. at 3-4, 7.) However, as the Court notes below, the ALJ appropriately discounted Plaintiff's subjective symptoms testimony.

In addition, Plaintiff asserts that she underwent a right-sided L5-S1 transforaminal epidural steroid injection, arguing that course of treatment indicate the severity of her condition. (AR 794.) District courts in this Circuit have not followed a consistent path regarding whether epidural steroid injections constitute conservative treatment. Compare Samaniego v. Astrue, 2012 WL 254030, at *12-13 (C.D. Cal. Jan. 27, 2012) (finding treatment with steroid and epidural injections not conservative), with Lederle v. Astrue, 2011 WL 839346, at *23 (E.D. Cal. Feb. 17, 2011) (characterizing epidural steroid injections as conservative treatment); see also Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (assuming but not deciding powerful pain medications and injections can "constitute

conservative treatment") (quotations omitted). However, the Court need not make a determination related to whether, in the instant case, such injections constitute conservative treatment as Dr. Massoudi's own opinion indicates that Plaintiff's treatment program has been conservative. (AR 770, 772.) Further, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff's treatment with epidural steroid injections does not preclude the ALJ from discounting Dr. Massoudi's opinion.

ALJs may properly reject the contradicted opinion of a treating physician by providing specific and legitimate reasons supported by substantial evidence, Bayliss, 427 F.3d at 1216. Further, an ALJ may appropriately discount an opinion of a treating physician if he "provide[s] nothing more than a statement of his unsupported opinion." Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988). With respect to Dr. Massoudi's opinion, "[t]here was no description – either subjective or objective – of medical findings, personal observations or test reports upon which [the treating physician] could have arrived at his conclusion." Id. In his ultimate conclusions of disability, Dr. Massoudi provides nothing more than a statement of unsupported opinion through a series of checks on a boilerplate form. In visits with Plaintiff in June and July of 2014, Dr. Massoudi's examinations yielded no acute findings. (See AR 773-75.)

The Court finds that the ALJ provided specific and legitimate (and clear and convincing) reasons that are supported by substantial evidence to support his decision to give low weight to the opinion of Dr. Massoudi.

## B. Adverse Credibility Determination

Plaintiff argues that the ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence. (Jt. Stip. at 3.) Plaintiff argues, specifically, that the ALJ erred in failing to provide a clear and convincing rationale for discrediting

Plaintiff's subjective testimony. (Id. at 8.) Further, Plaintiff asserts that the evidence as a whole clearly supports a finding that the Plaintiff's condition was severe, particularly in light of Dr. Massoudi's opinion. (Id. at 9.)

The Commissioner argues that the ALJ relied upon a number of factors in his evaluation of Plaintiff's subjective symptom testimony – including objective medical evidence, treatment notes, and inconsistencies between her claims and activities – and that he provided clear and convincing reasons based on substantial evidence to discount Plaintiff's subjective symptom testimony. (Id. at 14.)

### 1. Applicable Law

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony is not credible. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citing 42 U.S.C. § 423(d)(5)(A)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. As long as the plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). Second, if the claimant has produced such evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler, 775 F.3d at 1102 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

An ALJ's assessment of credibility should normally be given great weight, and where an ALJ's credibility finding is supported by substantial evidence, a reviewing court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).

Furthermore, "[a]n ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . ." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)).

When analyzing a claimant's subjective symptoms, the ALJ may consider factors relevant to the symptoms such as, inter alia, the claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms. See 20 C.F.R. § 404.1529.

The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted); see also Thomas, 278 F.3d at 958-59 (in analyzing credibility of claimant's pain complaints, ALJ may consider reputation for truthfulness, inconsistencies between testimony and conduct, work record); Fair, 885 F.2d at 603 (in analyzing claimant's pain, ALJ may consider evidence of daily activities, inadequately explained failure to seek treatment or follow prescribed treatment). In addition, the ALJ may consider testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms about which the claimant complains. See Thomas, 278 F.3d at 958-59 (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

However, once a claimant presents medical evidence of an underlying impairment, the ALJ may not discredit testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. Lingenfelter, 504 F.3d at 1035-36; see

12

also Bunnell, 947 F.2d at 346-47. Nevertheless, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

On March 28, 2016, after the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10 (Mar. 16, 2016).

**2. Analysis**

The ALJ found that the record demonstrated that the claimant had physical and mental limitations that could reasonably produce Plaintiff's alleged pain and other symptoms. (AR 29.) However, after considering the evidence in the record, the ALJ found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were partially credible and Plaintiff's allegations of disabling symptoms as a whole were not fully credible to the extent they suggested limitations greater than those in the record. (Id.)

Specifically, the ALJ noted that Plaintiff is capable of independent activities of daily living despite her alleged conditions. (Id.) Plaintiff testified that she was

13

able to perform the following activities without any assistive devices: shop for groceries, including lifting a gallon of milk and light grocery bags; walk about a half a mile; drive a car; and do household chores, such as dusting, doing dishes, and cleaning the bathroom. (Id.) While it is true that a finding of disability "does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (citations omitted), an "ALJ can discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina, 674 F.3d at 1113 (citations omitted). Here, the ALJ found that Plaintiff's daily activities belied her allegations of disabling pain, as they evidenced a clear ability to perform functions required from her previous work. (AR 29.) This finding is supported by substantial evidence in the record, including: Plaintiff's testimony; notes from the state agency non-examining physicians; and the treatment notes of examining physicians Plaintiff visited. (AR 87, 88, 90, 109, 115, 198-200.)

The ALJ further supported his finding that Plaintiff's subjective symptoms were disproportionate to the evidence in the record by citing several medical records indicating Plaintiff's issues related to her neck and back pain had been addressed and were well-managed. After issues following a surgery for Plaintiff's degenerative disc disease, the ALJ noted that Plaintiff reported that her pain was well-controlled with medication and two epidural injections, and Plaintiff stated that the radiculopathy that she felt in her lower right extremity was "an acceptable level of pain for her." (AR 30, 796.) This occurred October 30, 2014, after the alleged onset of disability. (AR 796.) The ALJ also noted that in a recent medical visit related to pain associated with her back and neck that Plaintiff continued to manage her pain with medication. (AR 30,798, 806.) While true that the pain management specialists diagnosed chronic pain syndrome, failed lumbar back

14

surgery syndrome, and lumbar radiculopathy, the physicians did not recommend further surgical intervention or additional diagnostic imaging for Plaintiff's neck or back problems. (Id.) Additionally, the diagnosis was done on October 30, 2014, the same day that Plaintiff indicated the pain was not disabling. (See AR 796.)

While Plaintiff argues that she suffers from disabling pain (Jt. Stip. at 17) and that she was complaining of increased radiating pain in the early part of 2014 (AR 9), she also made several visits to pain specialists during the same time period where Plaintiff complained of moderate pain at a level of 2/10. (AR 796, 804, 807, 811.) Plaintiff received information about spinal cord simulation therapy to help manage the pain, but Plaintiff decided she did not wish to move forward with that treatment. (AR 808, 809.) The ALJ also found no evidence of diagnostic notes or treatment related to Plaintiff's allegations of pain related to manipulation emanating from bilateral carpal tunnel release. (AR 30, 108.) Plaintiff does not contest this conclusion. (See Jt. Stip. at 8-9, 12.)

The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony regarding the severity of her subjective symptoms, linking specific parts of the record to specific allegations of pain to support his assessment. (AR 30-32.) The ALJ did not err in his evaluation of Plaintiff's subjective symptom testimony.

### C. RFC

Plaintiff argues that the ALJ failed to comply with applicable law in finding that Plaintiff retained the RFC to perform sedentary work and that she could return to work as a medical records clerk. (Jt. Stip. at 3.) She argues, specifically, that the ALJ should have taken into consideration Plaintiff's back and knee pain as well as associated postural limitations. (Id. at 16-17.) She also maintains that the ALJ erred in finding that her mental impairments were not severe at step 2 of his disability evaluation. (Id. at 17.) Further, she argues that the ALJ's reliance on

15

the state agency physicians was "misplaced." (Id. at 19.) The Commissioner asserts that Plaintiff maintained the ability to perform at a light exertional level with restrictions in performing postural and manipulative activities, which was supported through medical evidence and the opinion of state agency reviewing physicians. (Id. at 18.)

### 1. Applicable Law

The ALJ is responsible for assessing a claimant's RFC. 20 CFR § 404.1546(c). "The ALJ assesses a claimant's RFC based on all relevant evidence in the case record." Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citations omitted). "The RFC assessment must '[c]ontain a thorough discussion and analysis of the objective medical evidence and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations if appropriate." Id.; see also SSR 96-8p, 1996 SSR LEXIS 5, at *14 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

### 2. Analysis

Plaintiff argues that the ALJ was simply wrong in assessing her physical condition. (Jt. Stip. at 19.) Plaintiff contends that in August of 2014, she was in severe pain and receiving pain management; she was also diagnosed with failed lumbar back surgery, chronic pain syndrome, and lumbar radiculopathy. (AR 776, 778.) Plaintiff also re-raises the fact that she received an epidural steroid injection in August of 2014. (Jt. Stip. at 17.)

In assessing an RFC, the ALJ considers those limitations supported by the record and need not take into account properly rejected evidence. See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant]'s subjective complaints"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190,

1197 (9th Cir. 2004) (ALJ not required to incorporate into RFC findings from physician opinions that were "permissibly discounted").

The Court has already found that the ALJ properly discounted Plaintiff's subjective symptom testimony and appropriately ascribed low weight to Dr. Massoudi's opinion. Plaintiff's reliance on these, therefore, is unavailing. Though Plaintiff seems to challenge the ALJ's finding that Plaintiff's mental impairments were not severe, she does not cite to any evidence in the record supporting a contrary finding, and the Court's independent review of the record finds none.

With respect to the ALJ's reliance upon opinions of non-examining state agency physicians, an ALJ may consider findings by state-agency medical consultants. 20 C.F.R. § 404.1527(e). The Court finds that the ALJ properly relied on the state agency physicians as part of his basis to find Plaintiff capable of performing light work with certain limitations. (AR 31.) "The ALJ must consider all medical opinion evidence." Tommasetti, 533 F.3d at 1041. Generally, the most weight is given to the opinion of a treating physician and the least weight is given to the opinion of a non-examining physician. See Lester, 81 F.3d at 830. The opinions of non-examining physicians may "serve as substantial evidence when [they] are consistent with the independent clinical findings or other evidence in the record." Thomas, 278 F.3d at 957.

In making its conclusions, the state agency physicians reviewed the treatment notes of several of Plaintiff's physicians, including Dr. Massoudi. (AR 109-13, 126-28.) The state agency physicians reviewed the treatment records of Dr. Betts, who noted in February of 2013 that Plaintiff was well-developed and in no acute distress, apart from mild to moderate musculoskeletal discomfort. (AR 290.) Plaintiff had full motor strength in both lower extremities, but some tenderness in her back. (Id.) She was counseled to take a steroid injection for the allegations of pain in her lower back and right posterior thigh. (Id.) In March of 2013, Plaintiff

reported feeling significantly better after the epidural injection, and the pain associated with her lower back and leg was reported as a 1 on a 10-point scale and the pain did not limit activities. (AR 329.) A month prior she had told Dr. Johnson, an orthopedic specialist, that the back pain was as low as 3/10 and sometimes as high as 6/10. (AR 336.) In August and September 2013, Plaintiff visited Dr. Johnson presenting for a follow-up for neck pain located in the cervical spine (AR 319, 323.) Each time the physical exam was unremarkable, with Plaintiff exhibiting 5/5 motor strength in examinations of her upper and lower extremities. (AR 320-21, 324-35.) The neurological examination was also unremarkable each time. (AR 325-26.)

In November 2013, and in response to persistent symptoms of neck pain, Dr. Massoudi recommended cervical spine surgery for Plaintiff, which was performed in January 2014. (AR 365-66, 374, 402.) In March 2014, subsequent to Plaintiff's cervical spine surgery, Dr. Massoudi wrote that Plaintiff reported complete resolution of her preoperative symptoms of cervical pain and significant improvements in her symptoms of neck pain and stiffness, though Plaintiff continued to allege pain associated with her lower back and radiating pain to the right lower extremity. (AR 363, 364.) He made the same conclusions during a post-operative follow-up in July of 2014 while also noting Plaintiff's complaints of lower back and hip pain, as well as numbness in both feet. (AR 773.) Plaintiff submitted to epidural steroid injections with Dr. Small in early October 2014 to address the pain, but Plaintiff terminated the procedure. (AR 795.)

In late October 2014, after the alleged onset of disability, Plaintiff visited Dr. Small and reported that she had been taking gabapentin and tramadol for pain management and felt that her pain was well-controlled with complaints of 2/10 pain in her lower back and hip. (AR 796.) Plaintiff reported that the level of pain was acceptable to her. (Id.) In January 2015, Plaintiff re-visited Dr. Small and

reported the same low levels of pain in her lower back and radiating down her right leg. (AR 804.) During this visit, Dr. Small noted that Plaintiff's gait was non-antalgic with paralumbar tenderness in the back, but no midline spinal tenderness or parathoracic tenderness. (AR 806.) Range of motion for the hamstring was restricted along with a limited range of motion related to the adductor. (Id.) The findings of the neurological examination were unremarkable; strength and sensation was intact and lower extremity deep tendon reflexes were normal and symmetric. (Id.) Dr. Small recommended Plaintiff engage in a spinal cord simulator trial, which Plaintiff refused. (AR 808, 809.)

After reviewing these records, the state agency physicians concluded that Plaintiff suffered from medically determinable impairments, including spine disorders, dysfunction with major joints, and asthma. (AR 114.) Notwithstanding these impairments, the physicians found Plaintiff was capable of performing her past work with the following limitations: occasionally lifting of carrying 20 pounds; frequently lifting or carrying 10 pounds; standing or walking for a total of 6 hours in an 8-hour workday; sitting for a total of 6 hours in an 8-hour workday. (AR 115.) In addition, they recommended Plaintiff could climb stairs or ramps occasionally; never climb ladders, ropes, or scaffolds; kneel occasionally; crouch occasionally; and never crawl. (Id.) They further recommended postural limitations of no overhead reaching (so as not to extend neck, but otherwise Plaintiff could reach, handle, finger, and feel frequently. (AR 117.) At the hearing, the ALJ posed several different hypothetical questions to the VE. (AR 93-102.) Among them, he adopted the RFC recommended by the state agency non-examining physicians, and the VE found that Plaintiff would still be capable of performing her previous work as a medical records clerk, receptionist, and insurance specialist. (AR 92-95.)

The ALJ's RFC assessment was supported by substantial evidence.

## V.
## CONCLUSION AND ORDER

The Commissioner's decision denying Plaintiff's application for DIB benefits was supported by substantial evidence in the record. Accordingly, Consistent with the foregoing, IT IS ORDERED that that the decision of the Commissioner of Social Security is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and Judgment on the counsel for both parties.

DATED:    November 21, 2017

/s/ John D. Early

JOHN D. EARLY
United States Magistrate Judge